IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF UTAH

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF LOCATION DATA CONCERNING A CELLULAR TELEPHONE CURRENTLY ASSIGNED TELEPHONE NUMBER (801) 502-2152 (TARGET CELL PHONE) REGISTERD TO AHMAD SOHIL** | Case No. 2:26-mj-00100 CMR<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Justin Hansen, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of **the cellular telephone assigned call number 801-502-2152** (hereafter referred to as the "**Target Cell Phone**"), whose service provider is T-Mobile (or any other service provider as defined by Title 18, U.S.C. 2510(15)), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054; and the acquisition of certain approximate location information for the **Target Cell Phone**, and other dialing, routing, and signaling information that may be associated with communications to or from the **Target Cell Phone**, as further described in Attachment B;

and the acquisition of certain approximate location information for the **Target Cell Phone**, and other dialing, routing, and signaling information that may be associated with communications to or from the **Target Cell Phone**, as described in Attachment B. The **Target Cell Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. See 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. See 18 U.S.C. § 3123(b)(1).

3. I, Justin Hansen, am a Task Force Officer assigned to the Federal Bureau of Investigation (FBI). I have been employed by the Utah Department of Public Safety since October of 2001. I am currently assigned to the FBI Violent Crime Task Force (VCTF) and I am tasked with investigating various types of violent and federal crimes, to include locating and apprehending fugitives from justice.

4. You affiant knows from training and past experience with violent crime and fugitive investigations that persons involved with these types of crimes often utilize cellular phones to further their illegal activity and evade law enforcement.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit

is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in the affidavit an arrest warrant has been issued by US Probation for Ahmad Sohil for several violations of his release agreement.

## PROBABLE CAUSE

7. On January 30, 2026, FBI TFO Hansen was assigned to locate and apprehend Ahmad Sohil.  Sohil was sentenced on August 11, 2022, on the charge of Felon in Possession of Firearm, to twelve (12) months and 1 day incarceration and thirty-six (36) months Supervised Release.  After completing his prison sentence Sohil was placed on supervised released for thirty-six (36) months. Sohil violated his conditions of supervised release and on June 3, 2024, Sohil was sentenced to twelve (12) months and one (1) day followed by 18 months Supervised Release. Sohil again violated his supervised release and on September 23, 2024, he was sentenced to timed Served (74 days) with twenty-four (24) months Supervised Release.

8. From June 18, 2025, to August 10 2025,  Sohil allegedly violated the conditions of release seven times.  These violations included testing positive for Fentanyl, testing positive for Amphetamines, testing positive for Methamphetamine, and failure to submit to drug/alcohol testing.

9. On August 13, 2025, an arrest warrant was issued by United States District Court Judge Jill N. Parrish, Case Number 2:22-cr-00057-JNP.

10. To date, all attempts to locate and affect the arrest of Sohil have been unsuccessful and his whereabouts are unknown. Sohil has failed to report to his job, including failing to contact his employer for several days. Target phone number is registered with U.S. Probation as a contact number for Sohil and the number remains active. Additionally, Sohil's employer has contacted him on Target number.

11. In addition to a unique telephone number, each cell phone has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cell phone could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cell phone to a cellular antenna or tower – are like the telephone numbers of an incoming call. They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content.

12. Providers of cellular telephone service have technical capabilities that allow them to collect data that identifies the "cell-site" data which includes information about "cell towers" (i.e., antenna towers covering specific geographic areas) that received radio signals from particular cell phones. For each communication a cell phone makes, its cellular providers can typically determine: (1) the date and time of the communication; (2)

the telephone numbers involved; (3) the cell tower and in some cases, the "sector" (i.e., faces of the towers) to which the customer connected at the beginning of the communication; (4) the cell tower and sector to which the customer was connected at the end of the communication; and (5) the duration of the communication. Many cell towers divide their coverage up into multiple sectors (most often three 120º sectors). Where this is the case, the provider can usually identify the sector of the tower that transmitted the communication. However, cell towers are often half a mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to the cell phone does not necessarily serve every call made to or from that phone. Accordingly, this cell-site information allows law enforcement to determine only the general location of a cell phone.

13. In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data). These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents. A cell phone can also be used to exchange text messages with email accounts. Email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

14. Based on my training and experience, I have learned that information (similarly to information obtained via a pen register trap and trace) associated with the

**Target Cell Phone** such as all dialing, routing, addressing and signaling information associated with each communication to and from the **Target Cell Phone**, including, but not limited to any unique identifiers associated with the cell phone, including ESN, MEIN, MSISDN, IMSI, IMEI, SIM, or MIN; source and destination telephone numbers, email addresses associated with the account, subscriber information and any changes to subscriber information, and date, time, duration, connected to, and dialed number of all communications associated with the **Target Cell Phone** can be extremely useful when attempting to locate a suspect or identify his or her past historical location.  By analyzing the incoming and outgoing phone numbers along with the duration, date, and time of who the subject (**Target Cell Phone**) is communicating with through the cellular service provider's records can assist law enforcement in identifying the other party to the call.  By running those telephone numbers through normal investigative steps and searches through open-source public databases, this can lead to the identification of specific locations such as a hotel, residence, or other type of physical address.  When used in conjunction with cell-site and other precision location information can lead to identifying and confirming specific addresses or areas of interest where the subject is or has been. This information is also necessary, and part of the service provider's call detail records (ordinary business records) associated with historical cell-site information and is necessary to gain a more complete understanding and more accurate view of a subject's historical and perspective location. Additionally, obtaining information about the cellular device itself such as the ESN, MEID, IMEI in order to identify the make and model of the phone may become

necessary if further location information is requested from other communication providers. Also, once the subject has been taken into custody, this identifying account information (to include email addresses and subscriber information may also be necessary for evidentiary purposes to identify the cellular records with the subject's phone itself on a particular date and time. Furthermore, other identifying information such as subscriber information, email addresses associated with the user of the account, all assist law enforcement identify and confirming the end user (subject) to the account maintained by the service provider. This information may also help identify if the subject discontinues service, changes devices (such as IMEI, ESN, MEID), or if someone else begins using this telephone number after the subject terminates the account or provides the phone to another user.

15.    In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records including Timing Advance records or what is often referred to as TrueCall. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Furthermore, the tower closest to a wireless device does not necessarily serve every call

made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

16.     Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on T-Mobile's network or with such other reference points as may be reasonably available.

17.     Based on my training and experience, I know that T-Mobile can collect cell-site data and other more precision location information about the **Target Cell Phone** including what T-Mobile describes as TRUECALL and/or TIMING ADVANCE. Accordingly, I am requesting any and all records relating to TRUECALL and/or TIMING ADVANCE to include date, time, cell-site information to include latitude and longitude, sector and azimuth and distance from the tower for the previous 30 days of historical Timing Advance records between January 12 and February 12, 2026, and 30 days of general cell-site/sector historical call detail records of this order in addition to 30 days following the Order. I know based on my training and experience that historical records can be used to assist in locating subjects by showing a pattern of life/activity and area that are frequented by the subjects and could possibly help identify drug stash houses, co-conspirators, and residences involved.

18.     Based on my training and experience, I know that T-Mobile maintains historical call detail records for approximately 60 days to two years depending on the request.

## AUTHORIZATION REQUEST

19.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c) and 2703(d).

20.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the **Target Cell Phone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to possibly cease using the **Target Cell Phone** and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

21.     I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile.  I also request that the Court direct T-Mobile to furnish the

government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the **Target Cell Phone** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

22. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

//

//

//

//

//

//

//

//

//

23. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Justin Hansen
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on the 13th day of February 2026.



CECILIA M. ROMERO
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

1. **The cellular telephone assigned call number (801) 502-2152,** (the "**Target Cell Phone**"), whose wireless service provider is **T-Mobile**, a company headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054, for a period of thirty days preceding and thirty days following authorization by the Court.

2. Information about the location of the **Target Cell Phone** that is within the possession, custody, or control of **T-Mobile,** including information about the location of the cellular telephone if it is subsequently assigned a different call number, for a period of thirty days preceding and thirty days following authorization by the Court as further described in Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the Target Cell Phone as described in Attachment A for both historical (for a period of 90 days, to include 7 days of TrueCall and Timing Advance Records) and 30 days of prospective information related to the Target Cell Phone described in Attachment A including:

a. Subscriber information including but not limited to the customer's name, addresses, date of birth, social security number, other phone numbers on the same account, etc. email addresses, means and source of payment for such service (including any credit card or bank account number) and billing records.

b. Device identification information including but not limited to the IMEI, IMSI, ESN, MEID, Wi-Fi and Bluetooth MAC Addresses, etc.;

c. Billing information including but not limited to bank accounts/credit cards used to make payment and dates/locations where cash payments were received;

d. Complete records of usage for voice, SMS, and data sessions, including but not limited to dates, times, durations, all dialing, routing, addressing, and signaling information associated with each communication to and from the Target Cell Phone, including called numbers, calling numbers, cellular towers and sectors utilized for each communication, etc.;

e. RTT records, PCMD records, NELOS records, TrueCall or Timing Advance records, Historical NELOS, and all other records containing timing advance measurements and distance-to-tower measurements for all technologies (CDMA, GSM, UMTS, LTE, etc.); and

  f. Internet activity reports, records of Internet Protocol (IP) usage, etc.

All information about the location of the Target Cell Phone as described in Attachment A for a period of thirty days, during all times of day and night. Information about the location of the Target Cell Phone including all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information such as RTT records, PCMD records, NELOS records, TrueCall or Timing Advance records, and all other records containing timing advance measurements and distance-to-tower measurements for all technologies (CDMA, GSM, UMTS, 2 LTE, etc.), as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A. Including any and all call detail records relating to the above stated records.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control T-MOBILE, T-MOBILE is required to disclose the Location Information to the government. In addition, T-MOBILE must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-MOBILE's services, including by initiating a signal to determine the location of the Target Cell Phone on T-MOBILE's network or with such other reference points as may be reasonably available, and at such

intervals and times directed by the government. The government shall compensate T-MOBILE for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. See 18 U.S.C. § 3103a(b)(2).